```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY


SRC CONSTRUCTION CORP.           :
OF MONROE,                       :
                                 :    HONORABLE JOSEPH E. IRENAS
          Plaintiff,             :    CIVIL NO. 10-3461 (JEI/AMD)
                                 :
                                 :           OPINION
     v.                          :
                                 :
ATLANTIC CITY HOUSING            :
AUTHORITY, et al.,               :
                                 :
          Defendants.            :
```

**APPEARANCES:**

CONDON & ASSOCIATES, PLLC
By: Brian K. Condon, Esq.
55 Old Turnpike Road, Suite 502
Nanuet, New York 10954
          Counsel for Plaintiff

PARKER McCAY PA
By: Dana B. Ostrovsky, Esq.
3 Greentree Centre, Suite 401
7001 Lincoln Drive West
P.O. Box 974
Marlton, New Jersey 08053
          Counsel for Defendant Atlantic City Housing
          Authority

SUAREZ & SUAREZ
By: Joseph M. Suarez, Esq.
2016 Kennedy Blvd.
Jersey City, New Jersey 07305
          Counsel for Defendant Lindemon, Winckelmann,
          Deupree, Martin, Russell & Associates, P.C.

THOMPSON BECKER & BOTHWELL, LLC
By: Kevin M. Bothwell, Esq.
10 Melrose Avenue
Woodcrest Pavilion, Suite 210
Cherry Hill, New Jersey 08003
          Counsel for Defendant Czar Engineering

**IRENAS**, Senior District Judge:

This is a dispute arising out of the construction of an assisted living facility in Atlantic City. According to the pleadings, the facility was intended to be finished in approximately a year and a half, but seven years later, it was still not completed. The parties' disputes seem mainly to concern who is responsible for the delays that occurred.

Plaintiff SRC Construction Corp. of Monroe ("SRC Construction") was the general contractor for the project. Defendant Atlantic City Housing Authority owned the site on which the facility was to be built, and awarded SRC Construction the contract to build the facility. Defendants Lindemon, Winckelmann, Deupree, Martin, Russell & Associates, P.C. ("Lindemon"), an architectural firm, and Defendant Czar Engineering ("Czar"), and engineering firm, allegedly provided professional services in connection with the construction project pursuant to contracts with the Housing Authority.

The professional Defendants presently move to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6), based on New Jersey's Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to -29.[1] For the reasons stated herein, Czar's Motion to Dismiss will be granted, and Lindemon's Motion to Dismiss will be granted

---

[1] The Court exercises diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

in part and denied in part.

**I.**

In late 2001, Atlantic City Housing Authority awarded a "lump sum contract" to SRC Construction to build an assisted living facility consisting of "48 apartments, totaling an area of approximately 48,000 square feet, for the purpose of providing community assisted living residences to eligible senior individuals."  (Compl. ¶¶ 7, 8)

Several months later, in April, 2002, SRC Construction and the Housing Authority entered into a contract whereby "SRC [Construction] would perform the construction of the project for the [Housing Authority], within a period of six hundred and thirty (630) calendar days[2]" and the Housing Authority would pay SRC Construction approximately $5.8 million.  (Compl. ¶¶ 12, 13)

SRC Construction "attempted to commence performance on August 19, 2002" but alleges that it was "repeatedly and continually frustrated because of elongated delays caused by [Defendants] from the outset of the Project."  (Compl. ¶ 27)

SRC Construction alleges that Defendant Lindemon caused significant delays by:

---

[2]  The Housing Authority's counterclaim against SRC Construction alleges that the period was 600 calendar days (Counterclaim ¶ 5), however the difference is immaterial to the present Motions.

3

- "fail[ing] to provide the necessary building permits to SRC in accordance with their duties, responsibilities, and obligations" (Compl. ¶ 29)

- "fail[ing] to provide adequate project drawings to facilitate the necessary coordination of the utility (power, water, and sewer) design in accordance with their duties, responsibilities, and obligations" (Compl. ¶ 30)

- "fail[ing] to disclose . . . important information regarding subsurface conditions such as the location of cables, oil tanks and water mains in accordance with their duties, responsibilities and obligations" (Compl. ¶ 34)

- "fail[ing] to provide SRC with necessary architectural drawings . . . in a professional and/or timely manner in accordance with their duties, responsibilities, and obligations" (Compl. ¶ 36)

- "submitt[ing] drawings on multiple occasions to the Building Department that were deemed Non-Code Compliant" (Compl. ¶ 118(i))

- "fail[ing] to respond in a timely manner to Plaintiff's multiple requests for pertinent information on numerous issues" (Compl. ¶ 118 (iii)); and

- "repeatedly provid[ing] defective verbal approvals of change orders to Plaintiff, only to have these change orders rejected by [the Housing Authority] later" (Compl. ¶ 118(iv))

SRC Construction alleges that Defendant Czar caused significant delays by:

- "fail[ing] to provide SRC with . . . adequate engineering assistance in a professional and/or timely manner in accordance with their duties responsibilities, and obligations." (Compl. ¶ 36)

- "covering up its errors, omissions and breaches

4

>    of professional liability [sic]" (Compl.
>    ¶ 127(i)); and

- providing "faulty engineering drawings" to Lindemon (Compl. ¶ 127(ii))

SRC Construction alleges that the delays caused it to "incur additional costs" associated with the project. (Compl. ¶ 41) It further alleges that those costs, combined with the costs allegedly caused by the Housing Authority through its delays and other actions, exceed $3 million. (Compl. ¶ 89)

The Housing Authority allegedly terminated its contract with SRC Construction on May 4, 2009, with 96% of the project completed. (Compl. ¶ 91)

The Complaint asserts several claims against the Housing Authority only (most notably breach of contract), but those claims are not the subject of the pending Motions.[3] Against the professional Defendants, SRC Construction asserts breach of express and implied warranties and negligence claims.

All of the Defendants, among themselves, have asserted crossclaims for contribution and indemnification.

The Housing Authority has also asserted a negligence crossclaim against Lindemon. The Housing Authority alleges that Lindemon had a duty to review SRC Construction's "payment

---

[3] The Housing Authority has also asserted several counterclaims against SRC Construction including breach of contract based on SRC Construction's failure to timely complete the project, as well as misrepresentation claims, and a conversion claim.

5

applications" to the Housing Authority to ensure that the specified work was done correctly, and if it was not, inform the Housing Authority of problems.  (Crossclaim ¶¶ 7,8)  The Housing Authority alleges that had Lindemon properly reviewed the applications, Lindemon would have known that SRC Construction had not performed work "in the manner required by the Contract," Lindemon would have advised the Housing Authority of the problems, and the Housing Authority would have withheld payments to SRC Construction.  (Id. ¶¶ 8-9)

The professional Defendants move to dismiss SRC Construction's claims against them based on SRC Construction's failure to file an affidavit of merit in support of its claims. Lindemon also moves to dismiss the Housing Authority's negligence crossclaim against it based on the Housing Authority's failure to file an affidavit of merit.

**II.**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in

6

the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.

The issue is whether New Jersey's Affidavit of Merit statute applies to the claims and crossclaim at issue. It is undisputed that if the statute applies, and no exception applies, dismissal of the claims is appropriate.[4] The relevant portion of

---

[4] *See generally Paragon Contrs., Inc. v. Peachtree Condo. Ass'n,* 202 N.J. 415, 422 (2010) ("Neglecting to provide an affidavit of merit . . . generally requires dismissal with prejudice because the absence of an affidavit of merit strikes at the heart of the cause of action."); *Couri v. Gardner*, 173 N.J. 328, 333 (2002) ("failure to provide an affidavit results in dismissal of the complaint. . . . [T]he overall purpose of the statute is to require plaintiffs in malpractice cases to make a

the statute provides,

> In any action for damages for personal injuries, wrongful death or *property damage* resulting from an alleged act of *malpractice or negligence* by a licensed person in his profession or occupation, the plaintiff shall . . . provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. 2A:53A-27 (emphasis added).

Two subissues are presented: (1) is SRC Construction's alleged injury (incurring additional costs as a result of significant delays), and the Housing Authority's alleged injury (paying SRC Construction for inadequate work), "property damage" within the meaning of the statute?, and if yes; (2) do the claims and crossclaim at issue allege acts of "malpractice or negligence" within the meaning of the statute?

**A.**

With regard to the first subissue, the New Jersey Supreme Court has instructed that courts should focus on "the nature of the injury." *Couri v. Gardner*, 173 N.J. 328, 334 (2002). The type of damages sought are particularly relevant to the analysis.

---

threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation.")(internal citation and quotation omitted).

In *Couri*, the plaintiff brought suit against a psychologist whom he had retained for a child custody dispute after the psychologist distributed a draft report to the plaintiff's adversaries. 173 N.J. at 330-31. The New Jersey Supreme Court observed that the plaintiff had abandoned his initial claim for compensatory and punitive damages, and only sought to recover the fee he paid the psychologist's report and related costs. *Id.* at 335. Such an injury, the Court concluded, did not constitute "property damage" as contemplated by the Affidavit of Merit statute. *Id.*

In *Nagim v. New Jersey Transit et al.*, the Law Division distinguished *Couri*, noting that "[e]arly jurisprudence under the [Affidavit of Merit] statute has conclusively recognized that the 'property damage' language of the statute includes a claim for money damages." 369 N.J. Super. 103, 118-19 (Law Div. 2003). The court explained,

> 'Malpractice or negligence committed by architects, engineers, or attorneys may very well result in damage to real and personal property. Personal property embraces everything that may be tangible or intangible such as a chose in action. The right or claim to money damages . . . is a property right . . . beyond question.'

*Id.* at 119 (quoting *Cornblatt v. Barow*, 303 N.J. Super. 81 (App. Div. 1997)[5]). Thus, in *Nagim* the court concluded that a

---

[5] Reversed on other grounds by *Alan J. Cornblatt, P.A. v. Barow*, 153 N.J. 218 (1998).

9

defendant's crossclaim for contractual indemnification for the plaintiff's claims that it failed to ensure proper drainage from an adjacent construction site was a claim for "property damage" under the statute. *Id.* at 119. The key distinction according to the Law Division, was that *Couri* involved an injury which had "bec[ome] a finite sum of money already paid by the plaintiff to the defendant for which recompense was sought," whereas the claim at issue in *Nagim* involved "the actual defense [of the lawsuit] and/or the yet unspecified defense costs associated with plaintiff's claims." *Id.*

Guided by *Couri* and *Nagim*, this Court concludes that SRC Construction's claims against both Lindemon and Czar, and the Housing Authority's crossclaim against Lindemon, are claims for "property damage" under the Affidavit of Merit statute. Here SRC Construction does not seek to recoup a finite sum already paid to either Lindemon or Czar, instead, it seeks to recover from both Defendants, jointly and severally, "monetary damages . . . in an amount believed to exceed three million dollars." (Compl. ¶¶ 100, 119, 128) Likewise, the Housing Authority seeks to recover unspecified monetary damages from Lindemon. (Housing Authority's Crossclaim ¶ 10)

Accordingly, the Court next addresses whether SRC Construction's claims against Lindemon and Czar, and the Housing Authority's crossclaim against Lindemon, allege acts of

10

"malpractice or negligence."

**B.**

As to this second subissue, *Couri* instructs,

> [i]t is not the label placed in the action that is pivotal but the nature of the legal inquiry. . . . [R]ather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. . . . If such proof is required, an affidavit of merit shall be mandatory for that claim, unless either statutory, N.J.S.A. 2A:53A-28, or common knowledge exceptions apply.

173 N.J. at 341.

**(1)**

Examining the factual allegations as to Czar, it is clear that SRC Construction would be required to prove that Czar deviated from the standard of care applicable to engineers. The simplest and most obvious examples are SRC Construction's allegations that delays were caused by Czar's "faulty engineering drawings" and "[in]adequate engineering assistance." (Compl. ¶¶ 127(ii), 36). Certainly SRC Construction cannot prove its case without establishing the appropriate professional standard for engineering drawings and assistance, and proving Czar's failure to meet that standard. Similarly, SRC Construction cannot prove that Czar "covered-up" is breaches of

professional conduct without first establishing what those breaches were.

Thus, the Court concludes that the claims against Czar are "malpractice or negligence" claims as defined by the Affidavit of Merit statute. Moreover, SRC Construction does not assert that an exception to the affidavit of merit requirement applies to its claims against Czar, and the Court concludes that neither the exception of N.J.S.A. 2A:53A-28[6], nor the common knowledge exception[7] applies. Accordingly, the claims against Czar will be dismissed.[8]

---

[6] "An affidavit shall not be required pursuant to section 2 of this act if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with . . . records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the . . . records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request."

[7] *See infra*, p. 14.

[8] Czar's dismissal from the case has three implications which the parties apparently do not dispute.
First, Czar's dismissal from this case does not preclude the remaining Defendants-- Lindemon and the Housing Authority-- from arguing at summary judgment, or trial, Czar's liability to SRC Construction in an effort to reduce the damages attributable to either Lindemon or the Housing Authority. *See Burt v. West Jersey Health Sys.*, 339 N.J. Super. 296, 304 (App. Div. 2001) ("we conclude that the judge erred in precluding the [remaining] Hospital defendants from seeking to assert the negligence of the [dismissed] Anesthesiology defendants. That determination denied the Hospital defendants the opportunity, through no fault of their own, to proceed on their cross-claim and seek to shift some of the blame for plaintiff's injuries to the Anesthesiology

**(2)**

Some of SRC Construction's factual allegations as to Lindemon are similar to the allegations against Czar.  Thus, SRC Construction cannot prove that Lindemon "provide[ed] [in]adequate project drawings," (Compl. ¶ 30), without establishing the standard for, and departure from, adequate architectural drawings.  Proof of a deviation from the professional standard of care for architects would also be required to establish that Lindemon "failed to provide SRC with necessary architectural drawings . . . in a professional and/or timely manner in accordance with their duties, responsibilities, and obligations."  (Compl. ¶ 36)  Similarly, SRC Construction would also need expert testimony to prove that it failed to disclose "important information regarding subsurface conditions."  (Compl. ¶ 34)  Accordingly, SRC Construction's claims, to the extent they are based on such allegations, must be dismissed for failure to submit an affidavit of merit, and Lindemon's Motion to Dismiss

---

defendants simply because plaintiff failed to perfect her claim against the Anesthesiology defendants.").

   Second, the cross-claims for contribution and indemnification *against Czar* will be dismissed as moot because *Burt* holds that the remaining defendants "will [only] be required to respond to damages in accordance with the percentage of liability allocated to [them] by the jury."  339 N.J. Super. at 309.  Put another way, any recovery SRC Construction obtains against Lindemon and the Housing Authority will be reduced by the percentage of fault allocated to Czar.

   Third, *Czar's* cross-claims for indemnification and contribution will be dismissed as moot because Czar cannot be liable to SRC Construction as a matter of law.

will be granted to this extent.

However, some of the factual allegations do not necessarily require proof of deviation from the professional standard of care and therefore come within the common knowledge exception to the Affidavit of Merit statute.

A claim otherwise subject to the Affidavit of Merit statute may nevertheless proceed without an affidavit of merit "when expert testimony is not required at trial to establish the defendant's negligence"-- i.e., "when an expert will not be called to testify that the care, skill, or knowledge of the defendant fell outside acceptable professional or occupational standards." *Hubbard v. Reed*, 168 N.J. 387, 390 (2001). "[I]n a common knowledge case an expert is no more qualified to attest to the merit of plaintiff's claim than a non-expert." *Id.* at 395.

The facts of *Hubbard* provide a clear example of the exception. In that case, the plaintiff's malpractice claim was based on the allegation that the defendant dentist extracted the wrong tooth. 168 N.J. at 390. The New Jersey Supreme Court found, "the average layperson could apply his or her general understanding and knowledge to find that the defendant in this case . . . breached a duty of care" by pulling the wrong tooth. *Id.* at 396.

At least at this stage of the litigation, some of SRC Construction's factual allegations do not appear to require proof

14

by expert testimony. For example, Lindemon's alleged "fail[ure] to provide the necessary building permits to SRC," (Compl. ¶ 29), and "submitt[ing] drawings on multiple occasions to the Building Department that were deemed Non-Code Compliant" (Compl. ¶ 118(i)), will not necessarily require expert testimony. A layperson could understand that simply failing to provide a building permit, or submitting drawings that were deemed non-code compliant by a third-party, could cause delays that allegedly resulted in higher costs for the project.

Similarly, depending on why the alleged "verbal approvals of change orders" were "defective" (Compl. ¶ 118(iv)), expert testimony may not be necessary. For example, if the defect were nothing more than the inclusion of plainly erroneous information, such as an incorrect quantity of a particular material, expert testimony would not be needed.

Lastly, while Lindemon argues that SRC Construction will need an expert to establish whether or not Lindemon responded to requests for information in a "timely manner," (Compl. ¶ 118(iii)), the Court cannot reach that conclusion on the present record. Discovery may produce facts demonstrating such extensive delays that even a layperson could find them unreasonable. Thus, for example, while expert testimony might be necessary to establish the timeliness of a two week delay in responding to a certain request, such testimony might not be necessary to

establish the untimeliness of a 599-day delay when the entire project was expected to be completed in approximately 600 days.[9]

Thus, to the extent that SRC Construction's claims are based on allegations the proof of which will not require expert testimony, those claims will not be dismissed, and Lindemon's Motion to Dismiss will be denied.[10]

**(3)**

Lastly, the Housing Authority's allegations against Lindemon do not necessarily implicate Lindemon's performance as an architect.  Nothing in the facts pled suggests that Lindemon's professional skills as an architect were necessary either to (a) "properly review payment applications" submitted by the general contractor (SRC Construction) to the property owner (the Housing Authority) or (b) communicate defects to the Housing Authority. (Housing Authority's Crossclaim ¶ 7)  Stated more succinctly by the Housing Authority, "the Authority's claim against Lindemon is that [Lindemon] failed to properly perform its duties as Construction Manager, not as Architect."  (Housing Authority's

---

[9]   The Court makes no ruling on any particular factual scenario at this time.  Such decisions will be made, if necessary, at summary judgment.

[10]   If, however, discovery demonstrates that establishing any of the remaining claims will require expert testimony-- indeed, if SRC Construction seeks to use an expert for such purpose-- such claim or claims would be subject to dismissal on summary judgment.

brief, p. 3) Thus the Housing Authority's crossclaim will not require proof that Lindemon deviated from the professional standard of care applicable to architects and, therefore, those claims are not subject to the Affidavit of Merit statute.

Lindemon's Motion to Dismiss the Housing Authority's crossclaim will be denied.

**IV.**

For the reasons set forth above, Czar's Motion to Dismiss will be granted. Lindemon's Motion to Dismiss SRC Construction's claims will be granted in part and denied in part. Lindemon's Motion to Dismiss the Housing Authority's negligence crossclaim will be denied. The Court will issue an appropriate order.

April 12, 2011            s/ Joseph E. Irenas
                                  JOSEPH E. IRENAS, S.U.S.D.J.