```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


SRC CONSTRUCTION CORP.          :
OF MONROE,                      :
                                :    HONORABLE JOSEPH E. IRENAS
          Plaintiff,            :    CIVIL NO. 10-3461 (JEI/AMD)
                                :
                                :             OPINION
     v.                         :
                                :
ATLANTIC CITY HOUSING           :
AUTHORITY, et al.,              :
                                :
          Defendants.           :
```

**APPEARANCES:**

CONDON & ASSOCIATES, PLLC
By: Brian K. Condon, Esq.
55 Old Turnpike Road, Suite 502
Nanuet, New York 10954
        Counsel for Plaintiff SRC Construction Corp. of Monroe

PARKER McCAY PA
By: Dana B. Ostrovsky, Esq.
3 Greentree Centre, Suite 401
7001 Lincoln Drive West
P.O. Box 974
Marlton, New Jersey 08053
        Counsel for Defendant Atlantic City Housing Authority

SUAREZ & SUAREZ
By: Joseph M. Suarez, Esq.
2016 Kennedy Blvd.
Jersey City, New Jersey 07305
        Counsel for Defendant Lindemon, Winckelmann, Deupree,
        Martin, Russell & Associates, P.C.

**IRENAS**, Senior District Judge:

In this diversity suit, the parties dispute who is responsible for the extended delays that occurred during the construction of an assisted living facility in Atlantic City, New Jersey, which allegedly resulted in several million dollars in additional costs. Defendant Lindenmon, Winckelmann, Deupree, Martin, Russell & Associates, P.C. ("Lindemon") presently moves for summary judgment, asserting that all of Plaintiff's claims against it are barred by New Jersey's economic loss doctrine. For the reasons stated herein, the Motion will be denied.

## I.

The following facts are undisputed for the purposes of this Motion. In late 2001, Defendant Atlantic City Housing Authority ("ACHA") awarded a lump sump contract to Plaintiff SRC Construction Corp. of Monroe ("SRC") to build the John P. Whittington Senior Living Center. In April, 2002 ACHA and SRC entered into a contract for the construction of the facility, whereby SRC would be the general contractor for the project. (Condon Cert. Ex. A)

This is mainly a suit between SRC and ACHA. Against ACHA only, SRC asserts claims of breach of contract, unjust enrichment, wrongful termination of the contract and conversion. Similarly, against SRC only, ACHA asserts counterclaims of breach of contract, negligence, intentional and negligent misrepresentation, and conversion.

However, the instant Motion does not implicate the claims between SRC and ACHA. Rather, Defendant Lindemon, who was the architect on the project-- and undisputedly had a contract with ACHA (Condon Cert. Ex. B), but not SRC (Rosciszewski Cert. Ex. C)-- moves for summary judgment on the two claims SRC asserts against it: (1) breach of express and implied warranties (Count 2 of the Complaint), and (2) negligence (Count 5).

Both claims are based on SRC's allegations that Lindemon caused significant construction delays by:

- "fail[ing] to provide the necessary building permits to SRC in accordance with their duties, responsibilities, and obligations" (Compl. ¶ 29);

- "submitt[ing] drawings on multiple occasions to the Building Department that were deemed Non-Code Compliant" (Compl. ¶ 118(i));

- "fail[ing] to respond in a timely manner to Plaintiff's multiple requests for pertinent information on numerous issues" (Compl. ¶ 118 (iii)); and

- "repeatedly provid[ing] defective verbal approvals of change orders to Plaintiff, only to have these change orders rejected by [the Housing Authority] later" (Compl. ¶ 118(iv)).

SRC alleges that the delays caused it to "incur additional costs" associated with the project. (Compl. ¶ 41) It further alleges that those costs, combined with the costs allegedly caused by the Housing Authority through its delays and other actions, exceed $3 million. (Compl. ¶ 89)

As stated previously, Lindemon moves for summary judgment

asserting that SRC's claims are barred by New Jersey's economic loss doctrine.

**II.**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Pub. Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The role of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

The Court first addresses the negligence claim (Count 5 of the Complaint) before turning to the breach of express and implied warranty claims (Count 2 of the Complaint).

### A.

The issue raised by Lindemon's Motion is whether the economic loss doctrine bars a plaintiff's negligence claim when: (1) the negligence claim is asserted against a defendant with whom the plaintiff has a business relationship but no direct contractual relationship; and (2) the plaintiff also asserts a related breach of contract claim against another defendant. The Court concludes the economic loss doctrine does not bar the negligence claim.

As the New Jersey Supreme Court discussed in detail in *Saltiel v. GSI Consultants, Inc.*, the economic loss doctrine helps to maintain the "critical" "distinctions between tort and contract actions" by precluding a party's "negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care." 170 N.J. 297, 310, 314 (2002). The Court repeatedly emphasized that the economic loss doctrine operates to bar tort claims where a plaintiff "simply [seeks] to enhance the benefit of

5

the bargain she contracted for." *Id.* at 315.[1]

In illustrating the operation of the economic loss doctrine, *Saltiel* discussed several cases, two of which guide the Court's analysis in this case.

In *New Mea Construction Corp. v. Harper*, 203 N.J. Super. 486, 489 (App. Div. 1985)[2], the plaintiff-builder (New Mea) sued the defendant-homeowners (the Harpers) for breach of contract, seeking "the balance of the contract payments." The Harpers asserted both a breach of contract counterclaim and a counterclaim for "negligent and careless workmanship." *Id.* In denying the Harpers' motion to amend their complaint, the Appellate Division explained,

> The crux of defendants' counterclaim for negligence is that [New Mea's principal] Ashworth negligently supervised the construction of the premises. Defendants are apparently claiming that Ashworth's 'negligent supervision' included use of materials that were not of the quality mandated by the contract's terms and other unnecessary work. For instance, defendants claim that the flooring and framing were done with lesser quality material than specified in the contract. . . . [T]his cause sounds basically in contract. The obligation to use the material specified in the contract rather than some lesser-grade material was clearly not an obligation imposed by law. Merely nominally casting this cause of action as one for negligent supervision does not alter its nature. Moreover, the obligation to use specified material could have been altered by an amendment to the contract. . . . Given these factors and the understanding

---

[1] *See also Id.* at 311 ("a buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects"), 312 ("We emphasized that the plaintiffs were attempting to seek the benefit of the bargain they made in their agreement.").

[2] Discussed with approval in *Saltiel,* 170 N.J. at 310, 313.

> that the relationship between the parties is governed by a lengthy and comprehensive contractual arrangement, defendants' counterclaim is more soundly based on contract than on tort.

*New Mea*, 203 N.J. Super. at 494.

On the other hand, in *Juliano v. Gaston*, the Appellate Division refused to apply the economic loss doctrine to the plaintiff-homeowners' (the Julianos') "negligent workmanship" claim against the subcontractors who participated in the construction of the Julianos' new home. 187 N.J. Super. 491, 493 (App. Div. 1982), *cert. denied by* 93 N.J. 318 (1983). "There was no direct contractual relationship between the parties." *Saltiel,* 170 N.J. at 312 (discussing *Juliano*). The Appellate Division held that the Julianos' "damages [for replacement and repair of defective workmanship] are recoverable in [a] negligence action." 187 N.J. Super. at 497. *See generally People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 N.J. 246, 249 (1985) ("a defendant's negligent conduct that interferes with a plaintiff's business resulting in purely economic losses, unaccompanied by property damage or personal injury, [can be] compensable in tort.").

The only meaningful distinction the Court discerns in these two cases is the presence of a direct contractual relationship in *New Mea* and the absence of a direct contractual relationship in *Juliano*. Thus, while not explicitly stated in *Saltiel*, the New Jersey Supreme Court's discussion of the economic loss doctrine and the juxtaposition of *New Mea* and *Juliano* suggests that the doctrine only

applies to bar certain tort claims *between parties to a contract*. Stated another way, the absence of a contract between a plaintiff and defendant in a negligence suit precludes the application of the economic loss doctrine. The Court's repeated emphasis that the economic loss doctrine operates to prevent plaintiffs from resorting to tort law in an "attempt[] to seek the benefit of the bargain they made in their agreement," *Saltiel*, 170 N.J. at 312, further supports this conclusion.

Lindemon espouses a subtle extension of the economic loss doctrine as stated in *Saltiel*. Lindemon obviously agrees that the doctrine operates to bar negligence claims between parties to a contract (as in *New Mea*), but further concludes that the doctrine also bars claims such as SRC's claim against it, where SRC asserts a related contract claim against another defendant, namely ACHA. Lindemon essentially argues that SRC is attempting to seek the benefit of its bargain with ACHA through a tort claim against Lindemon, and that the economic loss doctrine should bar such tort claim.

In support of its position, Lindemon submits *Horizon Group of New England, Inc. v. New Jersey Schools Construction Corp.*, 2011 WL 3687451 (App. Div. 2011), and a copy of a recent opinion from the Law Division, *Spectraserv, Inc. v. The Middlesex County Utilities*

8

*Authority, et al.,* Docket No. L-3577-07 (Law. Div. Feb. 8, 2013).[3] In both cases, the courts held that the economic loss doctrine barred a plaintiff's negligence claim even in the absence of a direct contractual relationship between the plaintiff and defendants. Moreover, both courts' decisions seemed to turn on the finding that the plaintiffs could have invoked contractual remedies in their contract with another defendant in the case. *See Horizon Group,* 2011 WL 3687451 at *6-7; *Spectraserv*, L-2577-07, at p. 33-35.[4]

However, *Horizon Group* and *Spectraserv* cannot be reconciled with *Juliano*.[5] Not only *could* the Julianos have sued the homebuilder with whom they had a direct contract, they did sue the homebuilder in a separate suit and obtained a judgment. *Juliano,* 187 N.J. Super. at 494-95. Yet the Appellate Division still held that the negligence claims against the subcontractor could proceed. *Juliano* is thus analogous to this case, and undermines Lindemon's attempt to extend

---

[3] *Spectraserv* is not available on either Westlaw or Lexis. Lindemon's counsel represents a defendant in the case.

In addition to *Horizon Group* and *Spectraserv,* Lindemon also relies on *Dynalectric Co. v. Westinghouse Electric Corp.*, 803 F. Supp. 985 (D.N.J. 1992). *Dynalectric* is distinguishable because: (1) the parties' contracts explicitly incorporated the terms of the other contracts, *Id.* at 992; and (2) the parties were simultaneously arbitrating the disputes that gave rise to the claims at issue, therefore the Court stayed the case pending arbitration without dismissing the negligence claim. *Id.* at 993.

[4] *See also Dynalectric*, 803 F. Supp. at 991 ("The question then becomes whether Dynalectric has another avenue of redress.").

[5] While both cases discuss *Saltiel*, neither case cites nor discusses *Juliano.*

the economic loss doctrine to this case.

*Juliano,* admittedly, is different from this case insofar as the homebuilder was insolvent and therefore the court observed that the judgment against the homebuilder would not likely be paid. 187 N.J. Super. at 495. But that fact does not appear to be integral to the court's holding, and in any event, the potential availability of an additional route to relief for SRC in this case is not a persuasive reason to bar its negligence claim.

The concept of the availability of an avenue of redress, as it relates to the economic loss doctrine, originates with *People Express.* There, the New Jersey Supreme Court justified its holding that a plaintiff *could* recover purely economic damages in the absence of physical harm (i.e., the economic loss doctrine did not apply) by stating "we strive to ensure that the application of negligence doctrine . . . does not unnecessarily or arbitrarily foreclose redress based on formalisms or technicalisms." 100 N.J. at 255. *See also Conforti & Eisele, Inc. v. John C. Morris Assoc.*, 175 N.J. Super. 341, 342, 344 (Law. Div. 1980) (holding that a "design professional is answerable in tort to a contractor who sustains economic damages as a result of the [design professional's] negligence in the absence of privity of contract," explaining that "to deny this plaintiff his day in court would, in effect, be condoning a design professional's right to do his job negligently.").

Leaving open an avenue of redress because no other exists is one thing, but *foreclosing* an avenue of redress simply because another

exists is quite another. Even in the typical economic loss doctrine case, such as *New Mea*, the reason for foreclosing a tort claim is not simply because a contract claim exists, but rather, that the tort claim is not really a tort claim at all; it is a contract claim in tort claim clothing. *See* 203 N.J. Super. at 494 ("Merely nominally casting this cause of action as one for negligent supervision does not alter its nature."); *see also Saltiel*, 170 N.J. at 311 ("a buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects"). But where there is no direct contractual relationship between the plaintiff and defendant, frequently there can be no contract claim at all, and therefore any tort claim asserted cannot possibly be a contract claim in tort clothing. Thus, the Court respectfully disagrees with the reasoning of the cases cited by Lindemon to the extent that they rely upon the availability of an alternate avenue of redress as a reason for barring the tort claims.

Accordingly, the Court concludes that the New Jersey Supreme Court would not extend the economic loss doctrine to bar SRC's negligence claim against Lindemon. Lindemon's Motion for Summary Judgment as to Count 5 of the Complaint will be denied.

**B.**

Summary judgment for Lindemon will also be denied as to the breach of express and implied warranties claims.

As to the breach of express warranty claim, the Court does not

11

see how the economic loss doctrine could apply to such a claim because it sounds in contract, not tort.  *See Kvedar v. Shapiro*, 98 N.J.L. 225, 228 (E. & A. 1922) (recognizing that a breach of warranty claim sounds in contract, not tort); *see generally Metropolitan Coal Co. v. Howard,* 155 F.2d 780, 784 (2d Cir. 1946) (Learned Hand, Circuit Judge) ("A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely.  It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.").[6]  As there is no contract between SRC and Lindemon, there seems to be no basis for a breach of express warranty claim.

The basis for Plaintiff's implied warranty claim is also unclear.  Plaintiff has not articulated what type of implied warranty, if any, might arise in the provision of services context (as opposed to the sale of goods context).

While there may be independent grounds for granting summary judgment to Lindemon on either of these claims, Lindemon has made no such argument, and the Court will not *sua sponte* grant summary judgment to Lindemon without briefing by both parties.  *See* Fed. R. Civ. P. 56(f)(2) (A court must "giv[e] notice and a reasonable time

---

[6]  Lindemon itself recognizes that the economic loss doctrine functions "as a limitation on recovery through tort based theories."  (Moving Brief, p. 6)

to respond" before granting summary judgment on "grounds not raised by a party."); *see also Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903, 910 (3d Cir. 1994) ("a district court may not grant summary judgment *sua sponte* unless the court gives notice and an opportunity to oppose summary judgment.").

Accordingly, Lindemon's Motion for Summary Judgment as to Count 2 of the Complaint will be denied.

**IV.**

For the reasons set forth above Lindemon's Motion for Summary Judgment will be denied in its entirety.  An appropriate Order accompanies this Opinion.


April 2, 2013                    <u>  s/ Joseph E. Irenas         </u>
                                 JOSEPH E. IRENAS, S.U.S.D.J.

13