File No. 14268-0011
**Law Offices**
**PARKER McCAY P.A.**
**9000 Midlantic Drive, Ste. 300**
**P.O. Box 5054**
**Mt. Laurel, NJ 08054**
**(856) 596-8900**
Attorneys for Defendant, Atlantic City Housing Authority d/b/a The City of Atlantic City Housing Authority and Urban Redevelopment Agency

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SRC CONSTRUCTION CORP. OF MONROE d/b/a SRC INDUSTRIES, INC.<br><br>Plaintiff<br><br>v.<br><br>ATLANTIC CITY HOUSING AUTHORITY d/b/a THE CITY OF ATLANTIC CITY HOUSING AUTHORITY AND URBAN REDEVELOPMENT AGENCY, LINDEMON, WINCKELMANN, DEUPREE, MARTIN, RUSSELL & ASSOCIATES, P.C., and CZAR ENGINEERING<br>                    Defendants | Civil Action No. 1:10-cv-03461-JEI-AMD<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO DISMISS THE PLAINTIFF'S COMPLAINT AGAINST IT** |

## STATEMENT OF FACTS

The Atlantic City Housing Authority (hereinafter "ACHA") adopts the Statement of Facts as set forth in its Answer, Affirmative Defenses, and Crossclaims filed with United States District Court for the District of New Jersey, Camden Vicinage, on September 8, 2010 (Exhibit 1) as if set forth in its entirety, and offers the following additional facts as to events occurring since that time.

On April 24, 2002 the ACHA executed a contract with SRC Construction Inc. (hereinafter "SRC") for construction of the new John P. Whittington Senior Living Center, a 48,000 square foot, 4 story senior living center with 48 rooms at the property located at New Hampshire and Madison Avenues in Atlantic City, NJ (the "Project") owned by the ACHA. (Exhibit 2).

On January 4, 2013, our office received a copy of SRC's expert report on liability issues authored by Conrad Roncati of Architectura, a New Jersey-based architectural firm specializing in architecture, urban design, development, and planning. The report by Architectura, entitled "Professional Evaluation Design and Construction" is dated December 26, 2012. Thereafter, Architectura submitted a revised report on February 20, 2013 (the "Architectura Report") (Exhibit 3) with corrected outline number headings and provided pagination. The substance of the revised report remained unchanged.

As indicated in the Architectura Report, SRC retained Architectura "…to render an opinion as to whether quality of the services rendered in the overall planning, preparation of the design and construction documents, and the administration of the project by the project architect [Lindemon, Winckelmann, Deupree, Martin, Russell & Associates, P.C., hereinafter "Lindemon"] and the ACHA allowed or obstructed SRC to effectively construct the project that was contracted April 24, 2002." See, Architectura Report, Page 3. Stated differently, the Architectura Report is intended to serve as Plaintiff's expert evaluation to ACHA's liability in this matter.

In response to the Architectura Report, ACHA retained Greyhawk, Construction Managers & Consultants to opine on (1) the reasonableness of SRC's termination by the ACHA, (2) the merit of the claims of delay and for change orders as reflected in Architectura's

2

report on behalf of SRC, and (3) whether Architectura's report met the industry standard for establishing entitlement for SRC to recover it alleged damages. (Exhibit 4).

On May 31, 2013, Lindemon filed a motion for summary judgment to dismiss Plaintiff's complaint against it. (Exhibit 5). Lindemon's motion, and this one, is primarily based on that Architectura Report.

## LEGAL ARGUMENT

### POINT ONE

THE EXPERT REPORT SUBMITTED BY ARCHITECTURA, ON BEHALF OF SRC, UPON WHICH SRC BASES ITS CLAIMS AGAINST ACHA, FOCUSES ON LINDEMON NOT THE ACHA.

The Architectura Report, as noted above, was submitted originally in December 2012 and the amended in February 2013. It clearly focuses on the alleged professional negligence of Lindemon. However, after SRC failed to submit and Affidavit of Merit as required by N.J.S.A. 2A:53A-27. Lindemon then moved for, and received, on April 12, 2011, an Order in which the Court ruled: "Lindemon's Motion to Dismiss is…GRANTED as to SRC Construction's claims against it, except to the extent that those claims are based on allegations the proof of which will not require expert testimony." That Order limited SRC's claims against Lindemon to only those that are not based on a failure to meet required professional standards, if any such claims exist.

Despite this clear Order from the Honorable Joseph E. Irenas, and SRC's failure to provide the required Affidavit, what the author of the Architectura Report generated was direct evaluation and critique of Lindemon's alleged failure to meet professional standards. The focus of this report is of critical importance since it was clearly stated in the April 2012 Order that SRC's claims against Lindemon for failure to meet the standard of the architectural

profession are barred <u>as a matter of law</u>.  SRC's expert report as to Lindemon's and ACHA's liability focuses almost exclusively on Lindemon's professional negligence, (which it is barred from doing) and utterly fails to establish liability upon the ACHA.

Mr. Roncati makes clear that SRC's expert was retained to opine on "whether the quality of the services rendered in the overall planning, preparation of the design and construction documents, and the administration of the project by the project architect <u>and the ACHA</u> allowed or obstructed SRC to effectively construct the project that was contracted April 24, 2002" (emphasis added).  He rendered a series of 22 "Expert Opinions" that focuses on Lindemon's deviations from professional standards.  The few opinions that do allege actions or inactions by ACHA causing delays and inefficiencies fail to provide adequate detail to support a cause of action.  Specifically, Greyhawk found that "of these 22 'Expert Opinions' tendered by Architectura, 20 of them are either not adequately supported or not supported at all.  The other two (2) were found to be statements rather than opinions." (<u>See</u>, Greyhawk Report, Page 6.)

The Architectura Report purports to establish liability on the part of Lindemon and the ACHA however, as made clear in this report, it concerns itself almost exclusively with the alleged professional negligence by Lindemon, as indicated by the following examples from Architectura Report, "Expert Opinions":

> "Incomplete plans and specifications delayed the issuance of necessary permits for the Project. It took LWDM **years** to finally submit to the Atlantic City Building Department (ACBD) complete information and to respond to requests for information and drawings. LWDM submitted amended drawings and responses over a protracted period of time. This is not normal practice." (emphasis in original) (<u>See</u>, Architectura Report, Page 38)

"ACBD rejected the contract documents as submitted by LWDM on multiple occasions for what appears to be building code violations or lack of information." (See, Architectura Report, Page 38)

"The number of change orders on this project (over 100 processed) was far in excess of what SRC should have expected. The vast majority of these Change Orders were processed **after** the construction was to have been completed and closed out. The plans and specifications prepared by LWDM were not of the quality required for a project of this scale and complexity and contained many errors and omissions, many of which were identified by the independent third party, the ACBD. LWDM's conduct did not meet the standard of care one would expect of a like professional in the same community and under similar circumstances." (emphasis in original) (See, Architectura Report, Page 40)

"The preparation and coordination by LWDM was not prudently performed to incorporate the Building elements and adjacent site conditions impacts on each other and vice versa. In addition, LWDM did not coordinate the full set of construction documents after the superstructure of the building was changed due to value engineering to incorporate the new systems. This led to multiple changes in mechanical systems and architectural detailing to conform to field conditions or building code requirements." (See, Architectura Report, Page 41)

"The site drawings were inaccurate and incomplete, and below the standard one would expect on a project of this size and complexity. For example, the Architectural and site drawings only marginally described the site contours, utilities and materials with the new complex's entries, exits and service needs." (See, Architectura Report, Page 43)

"A majority of these RFIs could have been avoided altogether if LWDM and ACHA provided sufficient plans and specifications at the time of bidding." (See, Architectura Report, Page 39)

**"It is not known at the time of writing this report if ACHA somehow prevented LWDM from completing accurate and complete bid or design documents prior to public bidding."** (emphasis added). (See, Architectura Report, Page 42)

5

Remarkably, Roncati states in his report at Opinion 13, "It is not known at the time of writing this report if ACHA somehow prevented LWDM from completing accurate and complete bid or design documents prior to public bidding." (See, Architectura Report, Page 42.) Thus, Roncati not only failed to establish liability on the part of ACHA, and not only was he apparently oblivious to the April 2011 Order of Judge Irenas, he also rather flatly states that he does not render an opinion as to the ACHA's liability on the issue.

Additionally, Architectura has not provided an analysis or quantitative assessment on any alleged damage incurred by SRC due to a material price increase, nor has any explanation been made on how or why the ACHA would be responsible.

The Architectura Report targets, the architect's alleged professional liability. It fails to distinguish or support any liability on the part of ACHA. It is therefore respectfully submitted that SRC's complaint against the ACHA must be dismissed, in its entirety, because Plaintiff's expert report does not establish any claim for liability on the part of ACHA.

## POINT TWO

### ACHA IS NOT RESPONSIBLE FOR ANY PROFESSIONAL NEGLIGENCE ON THE PART OF LINDEMON BECAUSE SRC FAILED TO FILE AN AFFIDAVIT OF MERIT.

As briefly referred to above, SRC failed to file a timely affidavit of merit pursuant to N.J.S.A. 2A:53A-27, which provides in pertinent part:

> In any action for damages, personal injuries, wrongful death or property damages resulting from an alleged act of malpractice or negligence by a licensed person in the profession or occupation, the Plaintiff shall, within 60 days following the date of filing of the Answer to the Complaint by the Defendant, provide each Defendant with an Affidavit of an appropriately-licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional or occupational standards or treatment practices.

On April 12, 2011, the Court partially granted Lindemon's dismissive motion for failure to file an Affidavit of Merit, holding "Lindemon's Motion to Dismiss is…GRANTED as to SRC Construction's claims against it, except to the extent that those claims are based on allegations the proof of which will not require expert testimony." (Exhibit 6) Simply stated, the Court dismissed SRC's claims against Lindemon except for the claims that were based upon the allegations which did not require expert testimony.  Counsel for Lindemon correctly points out in its second motion for summary judgment filed on May 31, 2013, "the Court held that without an Affidavit of Merit, SRC could not prove that LWDMR provided inadequate project drawings, that LWDMR failed to provide SRC with necessary architectural drawings in a professional or timely manner in accordance with LWDMR's duties, responsibilities, and obligations, or that LWDMR failed to disclose important information regarding subsurface conditions to SRC."  See, Lindemon's Motion for Summary Judgment, Page 4; also See, Opinion and Order, Page 13. [1]

The ACHA cannot be held vicariously liable for the acts of its agent in this matter.  The principal must exert some threshold of control over its agent.  In an employer-employee relationship the employer has clear control over the employee in assigning tasks, determining the manner in which the tasks should be carried out and also has right to terminate the employment. "[C]ontrol by the master over the servant is the essence of the master-servant relationship on which the doctrine of *respondeat superior* is based." Wright v. State, 169 N.J. 422, (2001).

---

[1] It is submitted that the April 2012 Order in Lindemon's favor effectively requires SRC to argue that the Affidavit is unnecessary because Lindemon's errors are so profound so as to constitute "common knowledge", meaning that layman can see the professional negligence here without expert testimony.  See, Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387 (2001) dentist pulling wrong tooth); Palangue v. Lambert-Wooley, 168 N.J. 398 (2001) (doctor misreading laboratory report); Bender v. Walgreen Eastern Co., 399 N.J. Super. 584, 590-591 (App. Div. 2008) (pharmacist filling prescription with the wrong drug).

7

Lindemon was clearly an independent contractor for the ACHA and not an employee. "[A]n employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract." See, Bahrle v. Exxon Corp., 145 N.J. 144, 156 (N.J. 1996); Majestic Realty v. Toti Contracting Co., 30 N.J. 425, 431, (1959); Restatement (Second) of the Law of Torts § 409 (1969) (Restatement). The New Jersey Supreme Court's reasoning is that the defendant does not control the independent contractor and therefore should not be vicariously liable for his acts.

According to Black's Law Dictionary, 8th Ed., an "independent contractor" is:

> Generally, one who in exercise of an independent employment, contracts to do a piece of work according to his own methods and is subject to his employer's control only as to end product or final result of his work. One who renders service in course of self-employment or occupation, and who follows employer's desires only as to results of work, and not as to means whereby it is to be accomplished.

There are only three (3) exceptions to the independent contractor rule:

> (1) the owner controls the manner of doing work;
>
> (2) the owner knew or should have known the contractor was incompetent; or
>
> (3) the contracted activity is negligent per se.

Mavrikidis v. Petullo, 153 N.J. 117 (1998); O'Keefe v. Sprout-Bauer, Inc., 970 F.2d 1244 (3rd Cir. 1992).

Clearly, none of these exceptions apply here.

The ACHA entered into a contract with Lindemon whereby Lindemon agreed to perform the prescribed scope of work solely for the Project. (Exhibit 7). The ACHA did not direct Lindemon how to perform the work; it did not control Lindemon. The ACHA did not provide equipment to Lindemon, it did not provide employees to Lindemon, and it did not tell Lindemon how to do its job. The relationship between the ACHA and Lindemon is squarely

8

within the meaning of "independent contractor", and for that reason the ACHA may not be vicariously liable for the acts of its independent contractor, Lindemon, even if SRC had positioned itself to have a viable cause of action against Lindemon.

## CONCLUSION

Because Plaintiff's claims against the ACHA are not sufficiently supported by its expert's report, it is respectfully submitted that the Court grant summary judgment dismissing all claims by Plaintiff against the ACHA.

PARKER McCAY P.A.

By: _____
RICHARD W. HUNT, ESQUIRE

Dated: June 24, 2013

LAW OFFICE
Parker McCay P.A.